UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

METROPOLITAN LIFE INSURANCE COMPANY, a foreign insurer,

    Plaintiff,

v.

DIANA GULINO, individually; TONYA URASHIMA, individually,

    Defendants.

DIANA GULINO,

    Cross Claimant,

v.

TONYA T. URASHIMA,

    Cross Defendant.

CASE NO. C08-0781-JCC

ORDER

This matter comes before the Court on Defendant/Cross Claimant Diana Gulino's Motion for Summary Judgment (Dkt. No. 36), Defendant/Cross Defendant Tonya T. Urashima's Response in opposition and Motion to Strike (Dkt. No. 41), and Diana Gulino's Reply (Dkt. No. 43). The Court has carefully considered these documents, their supporting declarations and exhibits, and the balance of pertinent materials in the case file, and has determined that oral argument is not necessary. The Court

ORDER – 1

hereby finds and rules as follows.

**I.     BACKGROUND**

This case was initiated with a complaint-in-interpleader filed by Metropolitan Life Insurance Company ("MetLife"), the claims fiduciary and plan administrator charged with the responsibility of distributing certain life insurance benefits in accordance with the Employment Retirement Income Security Act (ERISA). MetLife asked the Court to resolve a legal question of whether the decedent's former spouse or his widow is entitled to the benefits; or, more specifically, whether the terms of the Decree of Dissolution of the marriage between the decedent and his former wife operate as a waiver of the former spouse's rights to the plan benefits. (Compl. ¶ 18 (Dkt. No. 1 at 4).) MetLife deposited the benefits at issue into the Court's registry and was soon thereafter dismissed from this action. (12/12/08 Order (Dkt. No. 35).) Defendant/Cross Claimant Diana Gulino ("Gulino"), the decedent's former spouse, has now filed a motion for summary judgment, asking the Court to find as a matter of law that she, and not the decedent's widow, Tonya T. Urashima ("Urashima"), is entitled to the benefits. (Mot. (Dkt. No. 36).) The undisputed facts are as follows.

Bruce J. Urashima ("Bruce"), the decedent, and Gulino married on August 17, 1991. (Gulino Decl. ¶ 2 (Dkt. No. 38 at 1).) Bruce, an employee of General Electric, was a participant in the General Electric Employee Benefit Plan (the "Plan"), an employee welfare benefit plan regulated by ERISA. (Compl. ¶ 7 (Dkt. No. 1).) The Plan was funded by a group life insurance policy issued by MetLife. (*Id*.) MetLife serves as the claims fiduciary and the Plan administrator. (*Id*. ¶ 10.) On December 10, 1991, Bruce designated Gulino as the beneficiary of his GE Life Insurance Benefits. (GE Employee Benefits Plan Beneficiary Designations (Dkt. No. 1 at 58).)

Bruce and Gulino divorced on October 21, 1993. (Decree of Dissolution of Marriage (Dkt. No. 41-4 at 33).) The Decree of Dissolution, entered in King County Superior Court, awarded as separate property to Bruce:

Any and all pension, profit sharing, annuity, insurance and/or retirement benefits

ORDER – 2

> accruing to the Husband as the result of his past and/or present employment, including his present employment with General Electric. . . . Any and all life insurance policies insuring the life of the Husband not specifically referred to herein[.]

(*Id*. at 2 (Dkt. No. 41-4 at 34).) However, Bruce did not change his beneficiary designation as provided for by the Plan.[1] (Compl. ¶ 14 (Dkt. No. 1 at 3).) Rather, the latest beneficiary designation form on file for Bruce is his 1991 form naming Gulino as the beneficiary. (*Id*.)

In June 1999, Bruce married Urashima. (Mot. 2 (Dkt. No. 36).) While still married to Urashima, on May 2, 2006, Bruce died in an automobile accident. (Mot. 2 (Dkt. No. 36); Certificate of Death (Dkt. No. 1 at 7)).) On August 28, 2006, General Electric notified Gulino that according to company records, Gulino was the named beneficiary to receive benefits of five different life insurance policies under the Plan, totaling over $1.3 million: (1) Basic Life with death benefits of $278,125.00; (2) Additional Life with death benefits of $333,750.00; (3) Accidental Death & Dismemberment with death benefits of $111,250.00; (4) Occupational Life Insurance with death benefits of $111,250; and (5) Employee Personal Accident with death benefits of $556,250.00. (8/28/06 letter (Dkt. No. 38-3 at 2); Mot. 3 (Dkt. No. 36).) The letter instructed her to complete a Beneficiary Claim Form in order to claim the benefits. (*Id*.) Alternatively, the letter informed Gulino that she could disclaim the benefits by notifying General Electric that she intended to do so, and MetLife would send her the appropriate paperwork. (8/28/06 letter (Dkt. No. 38-3 at 3).)

After Gulino sent in her beneficiary claim form, however, on April 10, 2007, MetLife notified Gulino that she was not, in fact, the named beneficiary as to two of those policies. (4/10/07 letter (Dkt. No. 38-4 at 2).) Rather, the beneficiary designation completed by Bruce on December 10, 1991, was not applicable "to coverages, like PAI [the Employee Personal Accident plan], that were not then in effect, or to coverages that [Bruce] did not check on the designation, like the A Plus." (*Id*.) As such, MetLife

---

[1] The Summary Plan Description states that: "You may change beneficiary designations at any time by completing a new beneficiary designation form." (Dkt. No. 1 at 20.) It also cautions that "[i]f your ex-spouse was your beneficiary, he or she will continue as your beneficiary until you designate a different beneficiary." (Dkt. No. 37-2 at 8).)

ORDER – 3

1 paid to Urashima, Bruce's surviving spouse and the representative of his estate, the Additional Life benefits of $333,750.00 and the Employee Personal Accident benefits of $556,250.00. (Mot. 3 (Dkt. No. 36).) In addition, also on April 10, 2007, MetLife notified both Gulino and Urashima that with respect to the other life insurance benefits, to which the 1991 beneficiary designation form did apply, there was a question of fact and law as to which of them was entitled to the benefits that could not be resolved by MetLife without exposing the Plan to the danger of double liability. (4/10/07 letter (Dkt. No. 38-5 at 2).) In particular, MetLife stated that it:

> cannnot tell whether a court would find that federal common law waiver applies under ERISA, and, if so, whether [the] language from the divorce decree would constitute a valid waiver of Ms. Gulino's right to be named a beneficiary under the plan. If a court were to find that waivers apply and that the language is a valid waiver, then the benefits would be payable to Ms. Urashima. If a court were to find that waivers do not apply or that the language does not constitute a valid waiver, then the benefits would be payable to Ms. Gulino.

(*Id.* at 3.) As such, MetLife deposited the disputed benefits of $512,946.32 into the Court's registry and initiated this interpleader action. (Notice of Deposit of Funds (Dkt. No. 5).)

Gulino filed the instant summary judgment motion in March 2009, soon after the Supreme Court of the United States held, in *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, that a plan administrator has a duty under ERISA to follow a participant's beneficiary designation over a conflicting federal common-law waiver. 129 S. Ct. 865, 875 (2009).

## II. APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the moving party meets this initial burden, then

ORDER – 4

the party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See T.W. Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to a summary judgment motion, . . . the [non-moving party] can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, . . . which for the purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); FED. R. CIV. P. 56(e). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

Pursuant to the Federal Rules, "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." FED. R. CIV. P. 56(f).

## III. DISCUSSION

The Court must decide whether Gulino is entitled to the interpleaded funds as a matter of law because the plan documents designating her as the beneficiary are controlling, (Mot. 5 (Dkt. No. 36)), or whether, as Urashima argues, the motion should be stricken, denied, or continued under Federal Rule of Civil Procedure 56(f) on grounds that Urashima is entitled to conduct more discovery to determine whether the divorce decree constitutes a waiver or whether Bruce revoked his 1991 beneficiary designation. (Resp. 2 (Dkt. No. 41).) The Court will address each argument, in turn, below.

### A. Whether the Divorce Decree May Constitute a Waiver of the Right to Plan Benefits by Gulino

Gulino contends that the Supreme Court's recent ruling in *Kennedy* is dispositive of the only genuinely disputed issue in this case, that is, whether the language of the divorce decree may constitute a valid waiver of her right to the Plan benefits. ERISA "generally obligates administrators to manage

ORDER – 5

ERISA plans 'in accordance with the documents and instruments governing' them." *Kennedy*, 129 S. Ct. at 868; *see* 29 U.S.C. § 1104(a)(1)(D). As such, in *Kennedy*, the Court held that a plan administrator properly disregarded a waiver embodied in a divorce decree "owing to its conflict with the designation made by the former husband in accordance with the plan documents." 129 S. Ct. at 868.

In *Kennedy*, the decedent, William, was a participant in E.I. DuPont de Nemours & Company's savings and investment plan ("SIP"), governed by ERISA. *Id*. The SIP provided forms for designating and changing a beneficiary. *Id*. In 1974, William signed a form designating his then-wife Liv as the beneficiary of his SIP. *Id*. at 869. William and Liv's 1994 divorce decree stated that Liv was:

> divested of all right, title, interest, and claim in and to . . . [a]ny and all sums . . . the proceeds [from], and any other rights related to any . . . retirement plan, pension plan, or like benefit program existing by reason of [William's] past or present or future employment.

*Id*. William died without having executed any documents removing Liv as the SIP beneficiary. *Id*. After William's death, DuPont relied upon William's designation form and paid the SIP funds to Liv. *Id*. William's estate sued DuPont and the SIP plan administrator, arguing that the divorce decree constituted a waiver of the SIP benefits by Liv, and that DuPont had violated ERISA by distributing the benefits to Liv. *Id*. The district court granted summary judgment to William's estate, the Fifth Circuit reversed, and the Supreme Court affirmed, resolving, *inter alia*, a split among Courts of Appeals and State Supreme Courts "over whether a beneficiary's federal common law waiver of plan benefits is effective where that waiver is inconsistent with plan documents." *Id*. at 870.

In reaching its decision that the plan administrator had a statutory duty under ERISA to pay the benefits to Liv in conformity with the plan documents, the Court explained that:

> by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: "simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."

*Id*. at 875–76 (*quoting Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275,

ORDER – 6

283 (7th Cir. 1990) (Easterbrook, J., dissenting)). The Court also recognized that "the cost of less certain rules would be too plain" in that "[p]lan administrators would be forced 'to examine a multitude of external documents that might purport to affect the dispensation of benefits,' and be drawn into litigation like this over the meaning and enforceability of purported waivers." *Id.* at 876 (*quoting Altobelli v. IBM Corp.*, 77 F.3d 78, 82–83 (4th Cir. 1996) (Wilkinson, C.J., dissenting)). The Court expressly recognized that its decision was intended to avoid, where possible, a plan administrator having to resolve "these sorts of disputes through interpleader actions[.]" *Id.*

The undersigned finds that in all pertinent ways, the instant case is on all fours with *Kennedy*. Under the terms of the GE Plan, Gulino was Bruce's designated beneficiary. The plan provided an easy way for Bruce to change the designation, but for whatever reason he did not. The plan provided a way for Gulino to disclaim her interest in the benefits, but Gulino did not purport to follow it. Therefore, following *Kennedy*, this Court must conclude that under ERISA, the Plan documents control, and those documents name Gulino as beneficiary. *Id.* at 877; *see also* 29 U.S.C. § 1104(a)(1)(D).

### B. Federal Rule of Civil Procedure 56(f)

Urashima contends that the Court should strike, deny, or continue the hearing on the instant motion because she is entitled to conduct more discovery to determine whether the divorce decree constitutes a waiver or whether Bruce revoked his 1991 beneficiary designation.[2] (Resp. 2 (Dkt. No. 41).) The Court is not persuaded that any additional discovery is required before the Court may decide the instant motion. Urashima argues that the "exact terms of the plan documents and the designation procedures thereunder, which determine what is required to either waive benefits or designate a beneficiary thereunder are not known at this point." (Resp. 6 (Dkt. No. 41).) To support this argument,

---

[2] Urashima also asserts that she has been named in this action only in an individual capacity and seeks permission to intervene on behalf of Bruce's estate. (*Id.*; Mot. to Intervene (Dkt. No. 42).) The Court finds such intervention unnecessary because Urashima, an already existing party, adequately represents the interests of the estate. *See* FED. R. CIV. P. 24(a)(2). Accordingly, the Court hereby DENIES the motion to intervene.

ORDER – 7

Urashima asserts that Gulino has offered only selected portions of "an undated Employee Handbook" that only summarizes the plan documents and has not submitted the plan documents themselves. (*Id.*)

However, MetLife certified in the Complaint that it was attaching the pertinent portions of the Summary Plan Description as Exhibit B to the Complaint. (Compl. ¶ 12 (Dkt. No. 1 at 3).) Exhibit B is the GE Benefits Handbook effective January 1, 2004. (Dkt. No. 1 at 8.) A Summary Plan Description is a statutorily recognized plan document that is "written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The Court has no reason to doubt that the Summary Plan Description submitted by MetLife is an accurate description of the actual Plan instrument itself.

Further, the questions that Urashima contends she would hope to answer by further discovery have already been determined to the Court's satisfaction. The divorce decree language will not be found to constitute a waiver, pursuant to *Kennedy*. In addition, General Electric considered Bruce's 1991 beneficiary designation to be effective at the time of his death (8/28/06 letter (Dkt. No. 38-3 at 2)), demonstrating that Bruce did not follow the plan's procedures for changing his beneficiary designation by completing a new beneficiary designation form. (*See* Summary Plan Description (Dkt. No. 1 at 20).) MetLife asserted in its Complaint that the latest beneficiary designation form on file for Bruce was the 1991 beneficiary designation form naming Gulino as sole beneficiary. (Compl. ¶ 14 (Dkt. No. 1 at 3).) Urashima provides no reason beyond mere speculation to believe that contrary to this evidence Bruce did, in fact, revoke his designation, nor does she provide by way of any affidavit any specific reason why she could not present the facts she needed to oppose the instant motion. Urashima has known of the legal issue presented herein since at least April 10, 2007, when MetLife explained the issue in a letter to her attorney. (Dkt. No. 38-5 at 3.) It appears that after the status conference of December 10, 2008, at which the parties discussed with the undersigned their views as to whether this matter could likely be resolved by cross motions for summary judgment, Gulino's attorney made clear to Urashima's attorney

ORDER – 8

that he anticipated filing a summary judgment motion in March 2009, which he did. (Reply 9 (Dkt. No. 43).) Urashima presents no reason why she waited until the day her Response was due to issue a subpoena to the Records Custodians of MetLife and General Electric, (*see* Dkt. Nos. 39, 40)), if she believed she required further plan documents before opposing the motion. Moreover, permitting Urashima to delay a decision on this motion based only on speculation and her own delay in pursuing discovery would be contrary to the Supreme Court's concern that designated plan beneficiaries "get what's coming quickly". *Kennedy*, 129 S. Ct. at 875. For all these reasons, the Court denies Urashima's request to strike, continue, or deny the motion under Federal Rule of Civil Procedure 56(f).

**IV.     CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendant/Cross Claimant Diana Gulino's Motion for Summary Judgment (Dkt. No. 36). The Clerk is DIRECTED to disburse the interpleaded funds, plus interest, to Diana Gulino. The Clerk is also DIRECTED to CLOSE this case.

DATED this 4th day of June, 2009.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 9